208 So.2d 227

**Allen ELKINS, Jr.**

**v.**

**STATE.**

**4 Div. 605.**

Court of Appeals of Alabama.

March 5, 1968.

Phillips & Funderburk, Phenix City, for appellant.

MacDonald Gallion, Atty. Gen., and Carl E. Watson, Spec. Asst. Atty. Gen., for the State.

PER CURIAM:

This is an appeal by defendant from a judgment of conviction for second degree burglary and imprisonment for five years.

The Kennedy Grocery store in Phenix City was burglarized between the hours of eight Sunday night and seven Monday morning, September 17–18, 1966. Several cartons of cigarettes were stolen. Money, checks, insurance papers, deeds, payroll book, etc., and Mr. Kennedy's plain gold wedding ring were taken from the safe.

Defendant, his Uncle, James McCrory, and "two more boys" visited at the home of defendant's Cousin, Mrs. Epps, on Sunday. Mrs. Epps lived about a block from

**318**

the Kennedy store. Defendant and McCrory left the house twice during the afternoon, once to visit a relative in the hospital and once to go for a walk, but they never left the house after it became dark until they were ready to leave town.

Forrest Williams, a detective with the Phenix City police department, testified he participated in the investigation of the burglary and that he took defendant into custody at police headquarters in Villa Rica, Georgia, on September 20th. He also took possession of a '49 or '50 model, gray Pontiac automobile. Defendant was brought to the Phenix City police headquarters and the following day Elkins was brought from his cell into the detective's office, at which time Officer Williams noticed a ring on defendant's finger.

Mr. Kennedy testified the ring, marked State's Exhibit 1, was his ring; that he wore it for six years but hadn't worn it for three months prior to the time the building was broken into. He kept the ring in the safe in a little money drawer and saw it every day. He saw the ring on Saturday but didn't go into the drawer on Sunday. It was his custom to open the store for an hour or so on Sunday and he closed it about eight p. m., that Sunday.

There are no identifying marks on the ring; "no marks against it; just looks like it and fits just like I wore it for six years." The record shows the following on cross examination:

"Q. What I'm asking you, Mr. Kennedy, is it possible that this is a ring your size and looks like that but is not your ring? Is it possible that this is not your ring?

\*   \*   \*   \*   \*   \*

"A. I couldn't say it's not my ring, no sir.

"Q. Sir?

"A. I wouldn't say it's not my ring.
"Q. You wouldn't say it's not your ring?

"A. No sir. All I can go by is the looks and feel of it; I wore it six years.

"Q. There is nothing unusual about this ring?

"A. No, sir.

"Q. I have a plain—I call it a plain wedding band. It's a plain wedding band, it it not?

"A. That's right.

"Q. And you can't tell the jury then positively that this is your ring (indicating), could you, sir?

"A. No, sir, I couldn't say you couldn't tell it."

This witness first testified it was a plain gold band ring, the kind most men wear; that it could be very similar to many other wedding rings just like it; that it fit like his ring.

Mr. Kennedy testified further that among the coins taken from his store there were $10.00 worth of pennies with identifying wrappers on them and that he had seen the wrapped pennies in the detectives' office since the burglary.

Joe Harold Mitchell, testifying as a witness for the state, testified he was sixteen years old; that he came to Phenix City from Birmingham with defendant and two other persons in an old model gray automobile; that they stayed around the Epps house all day Sunday and left Phenix City around four or five o'clock in the morning. They were supposed to go to Birmingham but instead they started to Atlanta. James McCrory was driving the automobile. The witness noticed a box of cigarettes in the automobile with a tire on top of it. The cigarettes were not in the car when they came from Birmingham to Phenix City. He never looked in the automobile trunk. The car in which they were riding was stopped by highway patrolmen, who removed a brown paper sack with some money in it and some of the money was in a cigar box. So far as wit-

ness knew none of the money had wrappers around it.

No evidence was introduced on defendant's behalf.

We have carefully considered the evidence en banc and we are convinced the State failed to make out a prima facie case of defendant's guilt. Ex parte Grimmett, 228 Ala. 1, 152 So. 263; Bedsole v. State, 35 Ala.App. 567, 50 So.2d 457; Wildman v. State, 42 Ala.App. 357, 165 So.2d 396, cert. den., 276 Ala. 708, 165 So.2d 403.

The failure of the trial court to grant defendant's motion to exclude the evidence requires a reversal of the judgment and a remandment of the cause.

Reversed and remanded.